UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

**REGAL CINEMAS, INC.,**

    Plaintiff,

v.                                                    **Civil Action No.: 3:21-cv-00004-GEC**

**TOWN OF CULPEPER,**

    Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT TOWN OF CULPEPER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW the Defendant, Town of Culpeper, by counsel, pursuant to Rule 12(b)(6), Fed. R. Civ. P., and in support of its Motion to dismiss Plaintiff Regal Cinemas, Inc.'s Complaint against it for failure to state a claim upon which relief may be granted states as follows:

**BACKGROUND**

Plaintiff Regal Cinema, Inc. (hereinafter "Regal") asserts a four count Complaint against the Defendant Town of Culpeper (hereinafter "Town") for damages and equitable relief related to an April 29, 1999 Lease, attached as Exhibit 1 to the Complaint, (hereinafter "Lease"), between the Town as landlord under the Lease, and Regal as the successor tenant under the Lease. Regal, and its predecessor, operated a movie theater at the leased premises, commonly known as 210 S. Main Street, Culpeper, VA, (hereinafter "Property") until approximately March 23, 2020. Complaint ¶¶ 1, 34-36. Between March 23, 2020 and July 1, 2020 movie theaters were closed in the Commonwealth of Virginia pursuant to executive order. Complaint ¶¶ 34, 35, and 37. Movie theaters in the Commonwealth of Virginia were permitted to resume operations on July 1, 2020 and Regal resumed its movie theater operations at the Property on August 28, 2020. Complaint ¶¶ 37 and 39. Regal then "temporarily suspended its operations on October 9,

1

2020, *due to low attendance, lack of film product*, and safety concerns […]." Complaint ¶ 39 (emphasis added). As of the date Regal filed the Complaint, its movie theater remains closed. Complaint ¶ 42. Regal likewise ceased making timely rent payments under the Lease. Complaint ¶ 46. On February 10, 2021, over 120 days after Regal closed its movie theater operations to the public, the Town provided Regal a notice "purporting" to terminate the Lease, pursuant to Section 19 of the Lease and for default of for failure to pay rent (hereinafter the "Notice"), Complaint Exhibit 7. Complaint ¶¶ 61 and 64. Rent under the Lease is not fixed, but based upon gross receipts for the movie theater for the prior year. Complaint ¶ 15, Lease Section 6. Following receipt of the Notice, Regal remitted to the Town Fifty-Six Thousand Four Hundred Twenty-Eight and 65/100 dollars ($56,428.65) in rent and late fees due for the ten-month period of May 1, 2020 through February 2021. Complaint ¶ 64.

All four counts of Regal's Complaint arise out of its claims the Notice was "improper and ineffective" either based upon Regal's interpretation of the terms of the Lease or Regal's position that performance under Section 19 of the Lease, related to operation of the movie theater, is excused. *See* Complaint Counts I-IV.

## LEGAL STANDARD

In order to state a claim upon which relief may be granted, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[W]hile Rule 8 does not require 'detailed factual allegations,' a plaintiff must still provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 448 (E.D. Va. 2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citation omitted).

Rule 12(b)(6) provides for dismissal of a claim upon a showing that the claimant has not alleged "sufficient facts upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570. Although the Court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations," *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000), the Court is not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is inadequate to meet this standard. *See Bell Atlantic Corp.*, 550 U.S. at 555.

The Fourth Circuit Court of Appeals applied the standard set forth in *Twombly* and *Iqbal* to procedural motions to dismiss under Fed. R. Civ. P. 12(b)(6). The Court held that to survive a motion to dismiss, a complaint must "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (*quoting Ashcroft*, 129 S. Ct. at 1950); *see also Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) (affirming grant of motion to dismiss because plaintiff failed to state a plausible claim for relief).

**ARGUMENT**

    I. <u>Regal's Allegations Do Not State a Cause of Action for Declaratory Judgment (Count I)</u>.

    Regal cannot base an action for declaratory judgment on its claim the Town improperly issued the Notice terminating the Lease. "[D]eclaratory judgment is generally unavailable when claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Jones v. Jones*, 206 F. Supp. 3d 1098, 1112–13 (E.D. Va. 2016) (internal citations and quotations omitted). A district court's authority to issue a declaratory judgment is discretionary and the court should consider whether doing so will serve a "useful purpose in clarifying and settling the legal relations in issue[…]." *Id.* (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996)) (internal citations and quotations omitted); *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir.2004)) (internal citations and quotations omitted). Declaratory judgment serves no "useful purpose when it seeks only to adjudicate an already-existing breach of contract claim." *Metra Indus. Inc.* at 2. When "the same conduct underlies [the plaintiff]'s claims for declaratory judgment and breach of contract […] the claim for declaratory relief is duplicative and […] permitting the claim will not serve a useful purpose in settling the legal relations at issue." *Id.*

    Here, Regal's Count I for Declaratory Judgment and Count IV for Breach of Contract are both based on the same underlying conduct, specifically the Town's Notice to Regal terminating the Lease, and on Regal's argument that the Notice was not permitted under the Lease or that Regal's performance under the Lease is excused, rendering the Notice ineffective. However, there is no future uncertainty for the Court to adjudicate in Regal's Complaint. To the contrary, Regal acknowledges it seeks to adjudicate an already existing breach of contract claim, by

4

including Count IV for Breach of Contract in the Complaint. There would be no useful purpose in the Court issuing a discretionary declaratory judgment that the Town terminating the Lease for default *was* improper when such allegations are fully duplicative of Regal's breach of contract claim.

As such, Regal fails to state a proper claim for declaratory relief and Count I of the Complaint should be dismissed with prejudice.

II. <u>Regal Does Not Plead Sufficient Plausible Factual Allegations to State a Cause of Action for Injunctive Relief (Count II).</u>

Regal's request the Town be enjoined from exercising its contractual rights is not founded in law or fact. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success. *Winter* at 32, 381. "Each of these four requirements must be satisfied." *Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

As discussed *supra* and *infra*, Regal is not likely to succeed on the merits. However, the injunctive relief Regal seeks goes well beyond the scope of available relief for even those unsupported causes of action. Regal functionally requests the Court completely rewrite the Lease and Virginia landlord-tenant law to give Regal the unilateral authority to decide when and if to operate the movie theater, in direct contravention to the express terms of Section 19 of the Lease, and *additionally* strip the Town of most of its rights and all of its remedies under the

Lease *and* Virginia landlord-tenant law. Complaint ⁋ 80. Regal not only challenges the Notice terminating the Lease, but also asks the Court to rule the Town cannot terminate the Lease under Section 19 of the Lease so long as Regal chooses to remain closed; that the Town cannot ever reenter the Property except upon undefined "permitted reasons upon proper notice;" and that the Town cannot ever retake possession of the Property, nor ever interfere with Regal use or access to the Property, functionally creating a corporate life estate in the Property vested in Regal. *Id.* Regal provides no legal theory by which the Court can take such broad actions, much less any suggestion that Regal is likely to succeed on such claims.

Likewise, Regal's argument that it will suffer irreparable harm including the "loss of occupancy and use of [the Property]," "loss of business opportunity to earn revenue at the Property," "loss of brand value and good reputation it has at the Property," and "loss of value on its remaining options to extend the Lease" does not weigh in Regal's favor in light of Regal's admission that its October 9, 2020 closing of its movie theater operations was based on business decisions, including "customers' willingness to return to movie theaters," "low attendance," and "lack of film product" in addition to "safety concerns." Complaint ⁋⁋ 76, 38, and 39. Regal closed its movie theater operations, despite being legally able to remain open, albeit subject to "certain restrictions and with limited capacity." Complaint ⁋ 37. Regal did in fact open under those restrictions, and then made the decision (not pursuant to a governmental order) to close again. Complaint ⁋ 39. Further, Regal "took no further or alternative action to protect its rights and interests under the Lease." Complaint ⁋ 52. Any harm Regal has, or may experience, is self-inflicted and cannot be the basis for injunctive relief against the Town.

Both the elements of balance of the equities and public interest weigh heavily against Regal. As Regal repeatedly references in its Complaint, the Lease at hand does not provide even

6

a base rent to the Town, rather rent is based on Regal's revenue at the Property. *See* Complaint ¶ 51, Lease Section 6. Therefore, by remaining closed and not generating revenue, Regal deprives the Town of any reimbursement for its ongoing occupancy of the Property while also depriving the Town from any ability to mitigate damages and re-let the Property. Regal claims that the balance of the equities weighs in their favor by requiring parties to "honor their executed contracts" while simultaneously requesting the Court ignore the express terms of the contract at issue. Complaint ¶ 79. Section 19 of the Lease is clearly intended to prevent the tenant, Regal, from unilaterally ceasing operations and depriving the landlord, the Town, of rent under the Lease. Moreover, the Town is not merely a business, but a governmental entity. Complaint ¶ 6, Lease First Paragraph. Yet Regal makes the bold claim that allowing a private corporation exclusive possession of government owned property *and* giving that private corporation exclusive control of when and if it undertakes any activities which trigger its rent obligations *and* stripping the governmental entity of its rights and recourse as to the contract with the private corporation is somehow in the public interest. Regal's position is without support in the law or facts before the Court.

  Regal fails on all four elements of injunctive relief, and therefore fails to state a claim upon which relief may be granted.

  III. <u>Count III "Equitable Estoppel" is Not a Cause of Action.</u>

  Regal does not plead sufficient facts to support a cause of action for equitable estoppel, because no such cause of action exists. "[T] there is no recognized cause of action for estoppel under Virginia law […] [E]quitable estoppel usually operates as a shield, as opposed to a sword, and it does not of itself create a new right or give a cause of action." *Parker v. Westat, Inc.*, 301 F. Supp. 2d 537, 544 (E.D. Va. 2004) (internal citations and quotations omitted). "Thus, there is

no such thing as a 'claim' based on the doctrine of equitable estoppel." *Nasser v. WhitePages, Inc.*, No. 5:12CV00097, 2014 WL 55783, at *1 (W.D. Va. Jan. 7, 2014).

Regal's Count III "Equitable Estoppel" is based on a cause of action that does not exist in Virginia. Regal cannot plead any amount of facts to cure this failure, nor may the Court grant relief on a claim that is not recognized as a cause of action. Therefore, Count III "Equitable Estoppel" should be dismissed with prejudice as it is not possible for Regal to cure this fundamental defect in their pleading.

Even if the Court were inclined to consider an affirmative defense as a cause of action, "the doctrine of equitable estoppel prevents the showing of the truth [and] is applied rarely and only in extraordinary circumstances." *Anderson v. Cox*, 977 F. Supp. 413, 415–16 (W.D. Va. 1997). The six elements of equitable estoppel "should be evaluated stringently by the court [and] proved by the party seeking to invoke the doctrine by clear, precise, and unequivocal evidence." *Id.* Those elements are 1) a representation or concealment of material facts; 2) made with knowledge of the true state of facts; 3) to another party ignorant of the truth of the matter; 4) with the intention that the other party act on it; 5) proved to have been the inducement for the other party's action; and 6) resulting in the party claiming estoppel being misled to their injury.

Here, Regal's allegations are nothing more than "labels, conclusions, and a formulaic recitation of the elements" that are not plausible on their face. *See Iqbal,* 556 U.S. at 678. *See also Twombly,* 550 U.S. at 555. Regal's entire argument appears to be based upon its allegations that *after* Regal defaulted on the rent Regal attempted to negotiate the rent arrearage, during which discussions the Town's Treasurer "assured Regal of the Town's support of Regal and its lease in the Property, even stating that the Town was looking forward to Regal's re-opening in the spring of 2021." Complaint ¶¶ 46-50. Regal then goes on to allege:

> In reasonable reliance on the Town's assurances that the parties' relationship under the Lease would continue into 2021 without issue, Regal engaged in negotiations with the Town to establish a payment plan for past due rent, and planned to reopen to the public in the spring, but took no future or alternative action to protect its rights and interests under the Lease.

Complaint ¶ 52.

> On January 27, 2021, Town Treasurer Kartel informed Regal that (i) the Town would not permit any abatement of the past due rent, (ii) the Town understood that the rent of the upcoming annual period was expected to be fairly nominal, (iii) that Regal making payments of all amounts owed should not be an issue, and (iv) he would follow up with Regal after the next Town Council meeting. Regal responded that it would be standing by.

Complaint ¶ 54.

Regal then goes on to complain that the Town "without warning blindsided" Regal with the Notice on February 10, 2021, which stated that Regal had ceased operations "'for a continuous period in excess of 120 days, namely October 9, 2020 through February 9, 2021' and is therefore in default under Section 19 of the Lease." Complaint ¶¶ 56 and 58.

Regal argues that it was in default under Section 6 of the Lease and requested a waiver of that default, the Town discussed the matter with Regal and considered the request, before responding on January 27, 2021 "the Town would not permit any abatement of the past due rent" and that "Regal making payments of all amounts owed should not be an issue." Complaint ¶¶ 48-54. Despite this, instead of curing its default under Section 6 of the Lease, Regal "responded that it would be standing by" and did not pay the May 1, 2020 to February 2021 rent until after it received the Notice. Complaint ¶¶ 54, 64, and 66. Yet Regal takes the position that it only "negotiated" partial performance, via "payment plan," of its pre-existing contractual duties to pay past due rent "in reasonable reliance on the Town's assurances that the parties' relationship under the Lease would continue into 2021" and that it "took no further or alternative action to protect its rights and interests under the Lease." Complaint ¶ 52. Regal argues that the Town's

9

willingness to entertain waiving a default under Section 6 of the Lease, before refusing to waive the Section 6 default on January 27, 2021, constitutes a waiver by the Town of the future default on February 9, 2021 by Regal under Section 19 of the Lease. Regal's argument makes no sense under equitable principals and even less sense under the plain language terms of the Lease. Section 26 of the Lease requires all modifications of the Lease to be in writing and "executed and acknowledged by each of the Parties." Section 30 of the Lease further provides that:

> The failure of the Landlord or Tenant to insist upon strict performance of any of the terms, conditions, or covenants herein shall not constitute or be construed as a waiver or relinquishment for the future of any such terms, conditions, or covenants, and any such terms, conditions, or covenants shall continue in full force and effect. The payment of rent by Tenant, or the receipt of the payment of rent by Landlord, with knowledge of the breach of any other covenant herein contained, shall not be deemed a waiver of such breach on the part of either party.

Yet Regal argues that the Court should ignore the Lease's clear contractual language regarding modifications and waiver. Instead Regal requests the Court permit Regal's implausible claim that: 1) the Town's participating in negotiations related to the payment of rent and vague assurances of "the Town's support of Regal and its lease in the Property, even stating that the Town was looking forward to Regal's re-opening in the spring of 2021" allegedly made during the course of those discussions, 2) combined with formulaic recitations that Regal somehow relied on those actions to commit an additional breach of the Lease, 3) estops the Town from enforcing its rights pursuant to Regal's second breach and requires the Court ignore the plain terms of the Contract precluding such an estoppel.

Regal fails to plead a cause of action for equitable estoppel, and any attempt to amend Count III would be futile. Therefore, Count III Equitable Estoppel should be dismissed with prejudice.

   IV. <u>Regal Fails to Plead a Cause of Action for Breach of Contract (Count IV) against the Town.</u>

  Regal's attempts to plead breach of contract are contrary to basic rules of contractual construction. "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

> The interpretation of a contract presents a question of law. The contract is construed as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

*City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 271 Va. 574, 578, 628 S.E.2d 539, 541 (2006) (internal citations and quotations omitted).

  Regal's construction of the Lease requires the Court to ignore Section 13 of the Lease in its entirety, ignore multiple clauses of Section 19 of the Lease, and import clauses from Section 20 of the Lease into Section 19 of the Lease without a textual basis to do so. Regal requests the Court enforce non-existent obligations against the Town, while excusing Regal from its plain language obligations under the Lease.

   A. <u>Regal ceased operating its movie theater business at the Property for a period of one hundred twenty days.</u>

  The plain language of Section 19 of the Lease provides for default and termination of the Lease in the event Regal "vacates, abandons or deserts the property, *or ceases operating its movie theater business at the Property* for a period of one hundred twenty days (120) or more, without opening or reopening as the case may be […]." Lease Section 19 (emphasis added). As

11

discussed previously, there is no base rent required under the Lease; rather, rent is due quarterly based on a percentage of gross receipts from use of the Property, "including but not limited to, tickets, food, beverage, and novelty item sales." Lease Section 6.  The Lease also makes it clear that the parties intention is for the Property to be used as a movie theater complex.  Lease 2nd Whereas Clause, Lease Sections 1 and 2.  The Lease effectuates the rental of publicly owned land to a private corporation for a movie theater to be open to the public.  Lease 1st & 2nd Whereas Clause, Lease Sections 1, 3, and 4 ("On or before the Commencement Date, Tenant shall, at its sole cost and expense, complete all construction and have the Complex ready for opening to the public." Lease Section 4.).  The Lease further provides what Regal admits are "favorable annual rent payments, to be paid quarterly, based upon its total gross receipts for the prior year."  Complaint ¶ 15, Lease Section 6.  The Lease provides Regal has a separate ongoing maintenance obligation.  Lease Section 4, 2nd & 3rd Paragraphs.

      Under the Virginia standard rules of contractual interpretation that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly," in the context of the entire Lease Section 19's language "ceases operating its movie theater business at the Property" means just that -  Regal closed the movie theaters to the public and stopped generating gross receipts from use of the Property, "including but not limited to, tickets, food, beverage, and novelty item sales."  *See City of Chesapeake* at 578, 541; Lease Sections 6 and 19; Complaint ¶¶ 39 and 42.

      1. <u>Regal's "intent" is not relevant to if it "ceased movie theater operations."</u>

      Regal attempts to sidestep this clear breach of contract by asking the Court to add additional terms not found in the Lease, specifically that the cessation of operations must be

"willing" and "with no intent to reopen the movie theater on the Property." Complaint ¶ 27. None of this "intent" language is found within the Lease itself, but Regal requests the Court insert it, in clear contravention of basic contractual interpretation principals. The Lease provides a bright line of one hundred twenty (120) days during which the tenant, Regal, can cease operations before being declared in default. Lease Section 19. Regal may not ask the Court to add nebulous "intent" language to the terms which is simply not there.

### 2. Regal does not allege a "fire or other casualty."

Regal appears to hint, but not state plausible facts to support, that Regal considers ceasing its operations to be a "fire or other casualty." *See* Complaint ¶¶ 26, 40, 72. However, to the extent Regal is attempting to plead such, neither the Lease, which addresses such events in Section 13, nor Regal's own pleadings, which repeatedly state Regal's closure was at its own choice and due to various business concerns including lack of films and low attendance, support such a claim. Lease Section 13; Complaint ¶¶ 37, 39, 46, and 73.

### 3. Regal's contractual maintenance obligation of the Property does not constitute "movie theater operations."

Regal asserts that it "continued to operate its movie theater business on the Property, including maintaining the Property, continuing to supply the Property with all utilities, preparing the Property for re-opening, and employing personnel to monitor the Property." Complaint ¶ 45; *see also* Complaint ¶¶ 41 and 44. However, as noted above, Regal has a separate obligation under Lease Section 4 to maintain the Property and, further, is obligated under Lease Section 10 to maintain utilities at the Property. Lease Sections 4 and 10. Suggesting that not breaching additional contractual obligations under Lease Sections 4 and 10 constitutes compliance with the separate contractual obligation to operate "[Regal's] movie theater business at the Property"

13

pursuant to Section 19 of the Lease runs contrary to basic principles of contractual construction and would render the "operating" clause superfluous.

        B. <u>Section 19 of the Lease does not require thirty (30) days' notice nor opportunity to cure.</u>

Regal's position that the Court should overlay the Lease's Section 20 requirements over the Lease's Section 19 requirements is likewise not founded in basic contractual construction principals. Complaint ¶ 30. Lease Section 19 provides:

> In the event [Regal] […] ceases operating its movie theater business at the property for a period of one hundred twenty days (120) or more, without opening or reopening as the case may be […] [Town] may, at its sole option, declare [Regal] in default and terminate this Lease by giving *written notice* of such termination and the effective date thereof to [Regal]. Upon giving such notice, this Lease shall cease and come to an end as of the date set forth in said notice with the same force and effect as if such date had originally been set forth as the expiration date of this Lease. […] [Town] shall have each and all remedies provided for default in this Lease.

Lease Section 19 (emphasis in original). The plain language of Section 19 of the Lease provides for a specific notice process, that does not include a cure option, to terminate the Lease in the event Regal ceases it movie theater operations. To insert a thirty (30) day notice and cure option, which is not included in Section 19, not only constitutes "adding terms that were not included by the parties," but also would permit Regal to unilaterally close operations for up to five (5) months at a time, depriving Town of over forty-one percent (41%) of its rental income in any given year. *See City of Chesapeake* at 578, 541; Lease Section 6. The Court should not judicially revise the plain language of the parties' contract.

Further, Section 19 of the Lease also provides that in the event of termination pursuant to Section 19 "[Town] shall have each and all remedies provided for default in this Lease." Lease Section 19. Thus, the plain language of the Lease imports additional default *remedies*, but not

notice requirements to Section 19. This reading is reinforced by the remedies provided in Section 20 "Default":

> [...] then in any such case, Landlord may, at its sole option, exercise any one or more of the following remedies:
> i. Landlord may terminate the Lease by giving Tenant *written notice* of Landlord's intention to do so, which notice may be provided with the notices required in this paragraph, in which event the terms of this Lease shall end, and all rights, title and interest of Tenant hereunder shall expire on the date stated in such notice, which shall not be less than thirty (30) days after the date of the notice by Landlord of its intention to so terminate, but Tenant's obligation hereunder shall be continuing. Tenant covenants in such event, peacefully and quietly to yield up and surrender the Property to Landlord. Landlord may, at its sole discretion, re-enter and take complete and peaceful possession of the Premises, with or without process of law, and may remove all persons therefrom;
>
> ii. Landlord may enforce the provisions of this Lease and may enforce and protect the right of Landlord here under by a suit or suits in equity or at law for the specific performance of any covenant or agreement contained herein or for the enforcement of any other appropriate legal or equitable remedy;
>
> iii. Landlord may seek liquidated damages from the Tenant in the amount equal to rent for the prior nine (9) months, to compensate the Landlord for the time, lost profit and inconvenience of having to lease the Property anew.

Lease Section 30. If Regal were correct, the termination language included in Section 19 of the Lease would be duplicative of the termination remedy already provided under Section 20 of the Lease and the majority of the language included in Section 19 of the Lease would be superfluous.

Moreover, the Court would be required to ignore the distinction between Section 19's language, which places no restrictions on the effective date of the termination, and Section 20, which clearly requires the effective date of the termination "shall be not less than thirty (30) days after the date of the notice by Landlord of its intention to terminate." *Compare* Lease Section 19 and Lease Section 20. This is because the Lease draws a clear distinction between the defaults of vacation, abandonment, desertion, or cessation of operations described in Section 19 of the Lease and failure to pay rent, failure to remain in legal compliance, failure to maintain or repair the

15

Property, failure to maintain insurance, insolvency, and "catchall" breaches of the Lease addressed by Section 20 of the Lease. *Id.*

Plain reading of the Lease and basic rules of contractual construction permitted the Town to terminate the Lease upon written notice at an effective date selected by the Town. The Lease contains no requirement Regal be provided thirty (30) days, or any opportunity to "cure" its failure to operate the theater for the Town to effectuate termination under Section 19 of the Lease.

        C.  <u>Regal's performance is not excused.</u>

Regal's litany of legal conclusions as to why it should be excused from performance under the Lease are mere labels and not supported by its factual pleadings. *See* Complaint ¶ 92 ("Alternatively, if Regal is in default under the Lease, such default has been excused by the doctrines of *force majeure*, frustration of purpose, failure of consideration, illegality, impossibility, and/or impracticability of performance.") However, Regal's factual allegations are that Regal was legally permitted to resume movie theater operations on or about July 1, 2020, did in fact resume movie theater operations on August 28, 2020, and then "suspended operations" on October 9, 2020 due to "low attendance, lack of film product, and safety concerns." Complaint ¶¶ 37 and 39.

Lease Section 19 excuses Regal's operation of the movie theater only for "making of necessary renovations or repairs following a fire or other casualty." Lease Section 19. Lease Section 13 further clarifies the parties' rights and obligations in relation to "Damage by Fire or Act of God," specifically:

> If the Complex or other improvements on the Property, or any part thereof, are damaged or destroyed by fire, flood, natural causes, or other casualty, Tenant shall promptly notify Landlord of such destruction or damage; and Tenant with reasonable promptness and diligence shall rebuild, replace and repair any damage or destruction to the Property, at its

> sole cost and expense, to the extent of insurance proceeds available, in conformity with the requirements of Paragraph 11 above, so that after the completion of such repairs the Property shall be, as nearly as possible, in a condition as good as and having the value as great as the condition and value thereof immediately prior to such damage or destruction.

Lease Section 13.  The Lease does not contain any language, nor contemplate, excuse of performance by Regal because "restrictions implemented by the government have negatively impacted customers' willingness to return to movie theaters."  Complaint ¶ 38.  Regal has not alleged any part of the Property was damaged or destroyed by fire, flood, natural causes, or other casualty, requiring "necessary repairs or renovations."  Rather Regal alleges it was legally permitted to operate its movie theater, subject to certain restrictions, but Regal was not able to attract enough customers, under whatever metric it applied, and so exercised its discretion and suspended operations.  Complaint ¶ ¶ 37-39; *See also* Complaint ¶ 42 ("Regal's theater remains temporarily closed to the public as of the date of this filing, but Regal *intends* to re-open the theater shortly.") (emphasis added).

      Regal's claim that it *could not* resume operations at any point in time between October 9, 2020 and February 9, 2021 and therefore its performance is excused is not plausible on its face, nor an accurate conclusion of law.

> [I]f one undertakes unconditionally to perform an act which is not inherently impossible, but merely requires the acquiescence or consent of a third party, or the performance of a preceding act by the latter, the nonperformance is not ordinarily excused by the fact that it subsequently proves impossible for the promisor to comply with the contract, because of the refusal of the third party to give his consent or perform the act […].

*Barcroft Woods, Inc. v. Francis*, 201 Va. 405, 409–10, 111 S.E.2d 512, 516 (1959).  *See also Pennsylvania State Shopping Plazas, Inc. v. Olive*, 202 Va. 862, 866–67, 120 S.E.2d 372, 375–76 (1961) (finding contract performance was not excused when zoning laws permitted a variance and the non-performing party did not make a bona fide effort to obtain necessary permits).

Additionally, even were it impossible for Regal to resume operations, the *Town* also would not be required to perform under the Lease:

> [T]he obvious flaw in the tenant's attempt to invoke [the doctrine of impossibility] is that when the doctrine is applied it excuses future performance by *both* parties. We have found no case, and the tenant cites none, which holds that a party whose non-performance has been excused thereby may use the doctrine as a sword to compel the other party to accept performance different from that agreed upon.

*Reston Recreation Ctr. Assocs. v. Reston Prop. Inv'rs Ltd. P'ship*, 238 Va. 419, 426, 384 S.E.2d 607, 611 (1989) (internal citations omitted, emphasis in original).

Thus, not only does Regal fail to make out a plausible claim for excuse of its performance, but even if it had, the Court could not grant the relief sought by Regal to force the Town to perform under the Lease and provide Regal possession of the Property while simultaneously excusing Regal from its performance under the Lease.

### D. Count IV "Breach of Contract" should be dismissed with prejudice.

Regal fails to state a claim upon which relief can be granted, and amendment would be futile. The Court interprets the terms of the Lease as a matter of law. Ignoring Regal's legal conclusions as to the terms of the Lease, Regal has not plead sufficient facts, if true, to make out a cause of action for breach of contract against the Town nor has Regal pled facts which would excuse its performance under the Lease. Even if Regal attempted to amend its Complaint to plead such facts, the Court cannot grant the relief requested – namely to compel the Town to permit Regal to maintain possession of the Property while excusing Regal's own performance under the Lease. Therefore, Count IV "Breach of Contract" should also be dismissed with prejudice.

V. <u>Conclusion</u>

Regal fails to state a claim upon which relief may be granted against the Town under Rule 12(b)(6) as interpreted by the U.S. Supreme Court in *Iqbal* and *Twombly*. Setting aside Regal's erroneous legal conclusions, Regal's Complaint is precisely the unadorned "the-defendant-unlawfully-harmed-me accusation" the U.S. Supreme Court warned of in *Iqbal*. Regal's Complaint lacks any plausible claim against the Town. Therefore, the Town seeks dismissal of the Complaint in its entirety.

WHEREFORE, Defendant, Town of Culpeper, by counsel, hereby moves this Court for the entry of an order dismissing the Complaint with prejudice, for an award of attorneys' fees and costs pursuant to Section 24 of the Lease, and for such further relief as the Court deems proper and just.

Respectfully submitted,

THE TOWN OF CULPEPER
By Counsel


    /s/ Brett A. Callahan
Martin R. Crim
Virginia Bar Number: 33385
Town Attorney, Town of Culpeper
Brett A. Callahan
Virginia Bar Number: 74733
Assistant Town Attorney, Town of Culpeper
Vanderpool, Frostick & Nishanian, P.C.
9200 Church Street, Suite 400
Manassas, Virginia 20110
Telephone: (703) 369-4738
Facsimile: (703) 369-3653
Email: mcrim@vfnlaw.com
Email: bcallahan@vfnlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on March 4th, 2021, the foregoing Memorandum in Support of Defendant, Town of Culpeper's Motion to Dismiss Plaintiff's Complaint was filed electronically with the Clerk of the Court using the CM/ECF system.  Service of the filing will be made on all ECF registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                          /s/ Brett A. Callahan
Martin R. Crim
Virginia Bar Number: 33385
Town Attorney, Town of Culpeper
Brett A. Callahan
Virginia Bar Number: 74733
Assistant Town Attorney, Town of Culpeper
Vanderpool, Frostick & Nishanian, P.C.
9200 Church Street, Suite 400
Manassas, Virginia 20110
Telephone: (703) 369-4738
Facsimile: (703) 369-3653
Email: mcrim@vfnlaw.com
Email: bcallahan@vfnlaw.com